**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL HASHER, | : | |
| | : | Civil Action No. 08-5787 (JLL) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BERNARD GOODWIN, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Counsel for Petitioner
Timothy P. Beck
Joshua H. Beinhaker
DiFrancesco, Kunzman,
Coley, Yospin, Bernstein &
Bateman, PC
15 Mountain Boulevard
Warren, NJ  07059-5686

Counsel for Respondents
Meredith L. Balo
Union Co. Prosecutor Ofc.
32 Rahway Avenue
Elizabeth, NJ 07202

David L. DaCosta
Ofc. of the NJ Atty. Gen.
Dept. of Law & Public Safety
25 Market Street
P.O. Box 112
Trenton, NJ  08625

**LINARES**, District Judge

Petitioner Michael Hasher, a civilly-committed mental patient currently confined at the Special Treatment Unit in Kearny, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Bernard Goodwin and Gregg Conway.

For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> On April 7, 1997, M.E.H., who is presently forty-six years old, pled guilty to second-degree sexual assault resulting from the rape of A.P.  He was sentenced to ten years in prison.  Pursuant to the plea agreement, unrelated first-degree charges as to the rape of a second victim, T.M., were dismissed. Initially, both sets of charges were for first-degree aggravated sexual assaults.  M.E.H. disputes the charge as to T.M. and claims she was a prostitute with whom he had a disagreement as to price, although T.M. had no criminal history.  The assault on A.P. occurred May 1, 1996, when she experienced car trouble on the Garden State Parkway.  M.E.H. drove by her disabled vehicle and offered her a ride as they were headed in the same direction.  The disputed attack on T.M. occurred bout two months later on June 27, 1996.  M.E.H. would have completed the sentence imposed on the sexual assault on A.P. on January 15, 2004, and been released, but for the State's petition for his civil commitment.  The hearing was delayed for some time at the request of his attorney.

> Previously, on September 25, 1990, M.E.H. entered a guilty plea to a charge of criminal sexual contact and established as the factual basis that he forcibly touched the victim's breasts, vagina and buttocks.  He was sentenced to three years probation and ordered to pay restitution.  In that case, the victim, a former girlfriend, claimed that approximately one year after the parties' relationship ended, M.E.H. offered to work on her car.  When she went to his home for that

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

2

purpose, on October 14, 1988, M.E.H. physically
restrained and raped her.

On October 24, 1985, M.E.H. was arrested and
charged in Massachusetts on two counts of rape of a
child, and five counts of indecent assault and battery
on a child.  The alleged victims were a nine-year-old
and a twelve-year-old.  During the police
investigation, M.E.H. admitted having sex with the
twelve-year-old and admitted to police that the child
screamed when he penetrated her.  All charges involving
the children were ultimately dismissed.  Earlier, on
June 11, 1982, M.E.H. was arrested for attempted sexual
assault; on August 26, 1982, he pled guilty to a
downgraded plea of simple assault.

(Opinion of Appellate Division at 3-5 (Feb. 27, 2008).)

B.   Procedural History

Following a trial, Petitioner was civilly committed as a

sexually violent predator under New Jersey's Sexually Violent

Predator Act, N.J.S.A. 30:4-27.24 et seq.

Petitioner timely appealed his commitment to the Appellate

Division of the New Jersey Superior Court, which affirmed on

February 27, 2008.  The Supreme Court of New Jersey denied

certification on September 3, 2008.

This Petition followed.  In the Amended Petition, Petitioner

asserts the following grounds for relief:

Ground One.  (a) The state courts committed reversible
error by basing its decision to civil commit on
unreliable expert testimony and unproven hearsay
evidence.
(b) Due process and fundamental fairness prohibits
civil commitment based on unproven sexual misconduct.
(c) The trial court erroneously held civil commitment
could be based upon unproven allegations of misconduct.

Ground Two.  The transfer of Petitioner from state prison to the Special Treatment Unit without an evidentiary hearing violated his due process rights as set forth in Vitek v. Jones.[2]

Ground Three.  Petitioner argues that the state court erred when it failed to establish a procedure whereby committees can establish that he was denied effective assistance of counsel in the SVPA commitment proceedings.

Ground Four.  The New Jersey SVPA violates the Fourteenth Amendment of the United States Constitution because it fails to provide for trial by jury.

Ground Five.  Petitioner's right to due process was violated by the statutory procedures utilized by Respondent to civilly commit him under the SVPA.

Ground Six.  New Jersey does not provide counsel to potential SVP, until a temporary order was been made to temporary civilly commit, and be transported to a mental facility (STU).

Ground Seven.  The doctrine of fundamental fairness requires that Petitioner should be permitted to withdraw his guilty plea and civil commitment due to being told at the time of his plea that civil commitment could only happen if he were found to be compulsive and repetitive.

Ground Eight.  The trial court and the Appellate Division virtually absolved the Attorney General of any obligation to introduce competent evidence [to]

---

[2] Because Petitioner is no longer "in custody" pursuant to the initial temporary commitment order, any defect in that proceeding would not provide grounds for his release at this time, and this Court will not consider the adequacy of the initial temporary commitment proceeding.  But see Aruanno v. Hayman, No. 09-3499, 384 Fed.Appx. 144, 2010 WL 2381047 (3d Cir. June 14, 2010) (sex offender's due process rights were not violated when state court entered a temporary detention order pending a final commitment hearing under the New Jersey SVPA without first appointing counsel for offender and without holding an adversary hearing in which offender might challenge the temporary detention), pet. for cert. filed (Oct. 25, 2010).

establish a foundation for her expert's opinions. Certification should be granted so that this court may confirm that, like any other litigant, the Attorney General is obliged to present competent evidence to provide a foundation for her expert opinion.

Ground Nine.  The appellate court erred when it failed to establish a procedure whereby committees can establish that [they] were denied effective representation in SVPA commitment proceedings.

Briefing is complete and this matter is now ready for decision.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

5

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

6

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein). In such instances, "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)). "However, § 2254(e)(1) still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." Simmons v. Beard, 581 F.3d 158, 165 (3d Cir. 2009).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

7

Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

III.   THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The Sexually Violent Predator Act ("SVPA") provides for the civil commitment of individuals convicted of a sexually violent offense who qualify as "sexually violent predators."  N.J.S.A.

30:4-27.26.[3]  The SVPA defines a sexually violent predator

("SVP") as a:

> person who has been convicted, adjudicated delinquent
> or found not guilty by reason of insanity for
> commission of a sexually violent offense, or has been
> charged with a sexually violent offense but found to be
> incompetent to stand trial, and suffers from a mental
> abnormality or personality disorder that makes the
> person likely to engage in acts of sexual violence if
> not confined in a secure facility for control, care and
> treatment.

N.J.S.A. 30:4-27.26(b).

When it appears that a person may meet the criteria of an

SVP, an "agency with jurisdiction," such as the New Jersey

Department of Corrections, provides notice to the New Jersey

Attorney General at least ninety days before the anticipated

release of this individual.  N.J.S.A. 30:4-27.26, 30:4-

27.27(a)(1).  If the Attorney General concludes that public

safety warrants involuntary civil commitment, a petition for

---

[3] In enacting the SVPA, the New Jersey Legislature
determined that sexually violent predators require treatment in a
facility specifically designated for their control, care and
treatment.  N.J.S.A. 30:4-27.25.  The Legislature also recognized
that the nature of the mental conditions from which sexually
violent predators suffer, and the danger they present, make it
necessary to house those identified as sexually violent predators
in an environment separate from patients generally civilly
committed or otherwise confined.  Id., N.J.S.A. 30:4-27.34(a).

The Department of Corrections is responsible for the
operation of any facility designated for the custody, care and
treatment of sexually violent predators and shall provide or
arrange for custodial care of persons committed as sexually
violent predators.  In contrast, the Division of Mental Health
Services shall provide or arrange for treatment of persons
committed under the SVPA.  N.J.S.A. 30:4-27.34(a), (b).

commitment is initiated, supported by two clinical certifications, one of which must be from a psychiatrist who has examined the individual no more than three days before the submission of the petition for commitment.  N.J.S.A. 30:4-27.26; 30:4-27.28.

Upon receipt of this petition, the court conducts a temporary commitment hearing.  N.J.S.A. 30:4-27.28(f).  At this hearing, the court examines the supporting certifications and determines whether probable cause exists to believe that the individual qualifies as an SVP.  Id.  If the court finds probable cause, it issues an order authorizing temporary commitment to a secure facility designated for the care, control and treatment of SVPs, pending a final hearing.  Id.  The SVPA mandates that the individual under a temporary commitment order shall not be released from confinement before the final hearing, which will be scheduled within twenty (20) days after the initial hearing.  N.J.S.A. 30:4-27.28(f), 30:4-27.29(a).

Following the initial hearing, the court appoints counsel, if necessary.  The person under a temporary commitment order and his/her counsel shall be provided with the following at least ten (10) days before the final hearing:  (1) copies of the clinical certificates and supporting documents, (2) the temporary commitment order, and (3) a statement of the SVP's rights at the final hearing.  N.J.S.A. 30:4-27.30(a).  The individual is

afforded the following rights at his/her final hearing:  (1) the right to be represented by counsel or, if indigent, by appointed counsel; (2) the right to be present at the court hearing unless the court determines that because of the individual's conduct at the court hearing the proceeding cannot reasonably continue while the individual is present; (3) the right to present evidence; (4) the right to cross-examine witnesses; and (5) the right to a hearing in camera.  N.J.S.A. 30:4-27.31.

At the final hearing, the court hears evidence including testimony related to the clinical basis for involuntary commitment from a psychiatrist on the individual's treatment team, who has conducted a personal examination of the individual within five (5) days of the final hearing.  N.J.S.A. 30:4-27.30(b).  If the court determines by clear and convincing evidence that the individual qualifies as an SVP, the court issues an order of involuntary commitment.  N.J.S.A. 30:4-27.32(a).

Persons committed under the SVPA have a right to appeal the determination, to petition for discharge at any time, and to receive annual review hearings.  N.J.S.A. 30:4-27.35, N.J.S.A. 30:4-27.36.  In addition, the New Jersey Department of Health and Human Services may recommend termination of commitment.  N.J.S.A. 30:4-27.36.

The United States Court of Appeals for the Third Circuit has held that the SVPA is a civil, not criminal, statute. <u>See Aruanno v. Hayman</u>, No. 09-3499, 384 Fed.Appx. 344, 2010 WL 2381047 (3d Cir. June 14, 2010), <u>pet. for cert. filed</u> (Oct. 25, 2010).

IV.  <u>ANALYSIS</u>

Certainly, civil commitment represents a profound loss of personal liberty that requires both substantive and procedural due process protection. <u>See</u>, <u>e.g.</u>, <u>Parham v. J.R.</u>, 442 U.S. 584 (1979); <u>Jackson v. Indiana</u>, 406 U.S. 715 (1972). Nevertheless, "that liberty interest is not absolute." <u>Kansas v. Hendricks</u>, 521 U.S. 346, 356 (1997). Due process permits detention only where "heightened, substantive due process scrutiny" finds a "'sufficiently compelling'" governmental need. <u>Reno v. Flores</u>, 507 U.S. 292, 316 (1993) (O'Connor, J., concurring) (quoting <u>United States v. Salerno</u>, 481 U.S. 739, 748 (1987)).

Accordingly, the Supreme Court has held that States have a legitimate interest in providing care, through involuntary civil commitment, to citizens who are unable, because of mental illness, to care for themselves and who pose a danger to themselves or others. <u>See</u>, <u>e.g.</u>, <u>Allen v. Illinois</u>, 478 U.S. 364 (1986); <u>Addington v. Texas</u>, 441 U.S. 418 (1979).

"The substantive demands of due process necessarily go hand in hand with the procedural." <u>Demore v. Kim</u>, 538 U.S. 510, 551

12

(2003).  "'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances."  Cafeteria Workers v. McElroy, 367, U.S. 886, 895 (1961).  "Due process is flexible and calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors:  First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Matthews v. Eldridge, 424 U.S. 319, 334 (1976).

The Supreme Court has several times opined on the requirements of due process in civil commitment proceedings.  In the context of continued detention of an insanity acquittee, the Supreme Court held that the individual was entitled to an adversary hearing to determine his "dangerousness."  Foucha v. Louisiana, 504 U.S. 71, 81 (1992).

In the context of transfer of a prisoner to a mental health facility, the Supreme Court has held that such a transfer must be accompanied by certain minimum procedures:  (1) advance written notice that transfer is being considered, (2) a hearing at which the prisoner is given notice of the evidence being relied upon

and at which the prisoner may present documentary evidence and be heard in person, (3) an opportunity to present witnesses and to confront and cross-examine witnesses, except upon a finding otherwise for good cause, (4) an independent factfinder, (5) a statement of the evidence relied upon and the reason for transfer, (6) effective and timely notice of all the foregoing rights.  Vitek v. Jones, 445 U.S. 480 (1980).  In Vitek, the Supreme Court specifically did not hold that representation by counsel was required.

In the context of commitment pursuant to a statute providing for commitment of sexually violent predators, the Supreme Court has held that, to meet due process demands, the state must prove the need for civil commitment by "clear and convincing" evidence. Addington v. Texas, 441 U.S. 418 (1979).

It is against these decisions that this Court must test the procedures challenged here.  Specifically, Petitioner alleges that his detention under the final commitment order is unconstitutional because (1) he was denied effective assistance of counsel and was deprived of an avenue to raise that issue, (2) he was committed based upon hearsay testimony regarding sexual misconduct which had not led to convictions and which was relied upon by the State's expert witnesses, (3) he was denied a jury trial, (4) he was not permitted to withdraw his guilty plea on underlying convictions, on the ground that he had been told at

14

the time of his plea that civil commitment could only happen if
he were found to be compulsive and repetitive.

The Superior Court of New Jersey, Appellate Division,
rejected all of Petitioner's due process challenges to the final
order of commitment.

> M.E.H. contends that the commitment court erred
> because it based its decision to civilly commit him on
> "unproven allegations of misconduct."  M.E.H. also
> asserts that the due process clause requires proof
> beyond a reasonable doubt for SVPA involuntary civil
> commitments.  In his pro se brief, M.E.H. further
> contends that he was denied the effective assistance of
> counsel, and that the SVPA is unconstitutional because
> it does not require jury trials and violates the
> prohibition against ex post facto laws.

> ...

> As Judge Perretti correctly found, defendant's
> convictions for sexual assault in 1997 and criminal
> sexual contact in 1990 are the predicate offenses
> necessary for commitment under the SVPA.  N.J.S.A.
> 20:4-27.26.  "The Act defines 'sexually violent
> predators' in terms of the type of crime the person has
> committed, and does not limit the definition in
> relation to when the person committed the crime."  In
> re Civil Commitment of P.Z.H., 377 N.J. Super. 458, 463
> (App.Div. 2005).

> At the commitment hearing, the State must also
> prove the individual poses:

> > a threat to the health and safety of others
> > because of the likelihood of his or her engaging
> > in sexually violent acts .... by demonstrating
> > that the individual has serious difficulty in
> > controlling sexually harmful behavior such that it
> > is highly likely that he or she will not control
> > his or her sexually violent behavior and will
> > reoffend.

> > [In re Civil Commitment of W.Z., 173 N.J. 109, 132
> > (2002).]

15

Under the SVPA, an involuntary civil commitment can
follow an offender's service of a sentence, or other
criminal disposition, when he or she "suffers from a
mental abnormality or personality disorder that makes
the person likely to engage in acts of sexual violence
if not confined in a secure facility for control, care
and treatment."  N.J.S.A. 30:4-27.26; N.J.S.A. 30:4-
27.25(c).

Judge Perretti reasonably relied upon the State's
experts, a psychologist and a psychiatrist, in making
the requisite findings.  They concluded that M.E.H.
suffers from paraphilia NOS, and prior substance abuse.
The psychologist also determined that M.E.H. suffers
from a personality disorder, including antisocial
personality.  The psychiatrist diagnosed him as
suffering from a personality disorder NOS and impulse
control disorder NOS.  The psychiatrist interviewed
defendant a total of seven hours; the psychologist
tested and interviewed defendant over three hours.
Both relied, in addition to their interviews of M.E.H.,
on his prior charge history, statements he made to
institutional personnel, and statements he made to
police during the course of his various arrests.  Their
reliance on these materials is now challenged as
improper use of hearsay information.  Psychologists and
psychiatrists, however, are entitled to rely upon
hearsay information in formulating an opinion as to
mental conditions, consistent with the reliance of
others in their respective fields.  State v. Eatman,
340 N.J. Super. 295, 302 (App.Div.), certif. denied,
170 N.J. 85 (2001); see also N.J.R.E. 703.

Significantly, the State's psychologist testified
M.E.H. was a person at high risk to recidivate because
of his serious difficulty in controlling his sexually
offending behavior.  The State's psychiatrist viewed
the risk factor as "very, very high" as a result of
M.E.H.'s trajectory of increasingly violent sexually
assaultive behavior.  Although Judge Perretti
considered M.E.H.'s prior history of arrests and of
downgraded charges, she did so ony to the extent the
history was relied upon by the State's experts in
formulating their opinions.  The prior history enabled
her to better determine whether to accept the experts'
opinions, and the weight to be accorded to them.

16

As Judge Perretti noted, M.E.H.'s own expert, who testified at the commitment hearing, misconstrued New Jersey's statutory standard in evaluating M.E.H.  He repeatedly stated, for example, that he could only rely upon "clear and convincing" materials in formulating his clinical conclusions.  Judge Perretti properly discounted M.E.H.'s expert's opinion.

As defined by statute, a mental abnormality is "a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence."  N.J.S.A. 30:4-27.26.  A mental abnormality or personality disorder "must affect an individual's ability to control his or her sexually harmful conduct."  In re Civil Commitment of W.Z., supra, 173 N.J. at 127.  A finding of a total lack of control is not necessary.  Id. at 126-27.  Instead, a showing of an impaired ability to control sexually dangerous behavior will suffice to prove a mental abnormality.  Id. at 126-27 (citing Kansas v. Crane, 534 U.S. 407, 409, 122 S.Ct. 867, 869, 151 L.Ed.2d 856, 861 (2002)).  The conclusions of the State's experts established the requisite impaired ability to control sexually dangerous behavior.

On this appeal, M.E.H. further contends that the standard used in SVPA proceedings must be proof beyond a reasonable doubt.  That claim has long since been rejected.  ...  Similarly, the SVPA has never required trial by jury or has been viewed as in violation of the prohibition against ex post facto laws.  ...

M.E.H. also raises a claim of ineffective assistance of counsel, both at the hearing and on this appeal.  The focus of his arguments relate to the purported unconstitutionality of the SVPA.  Given the established state of the law, these claims are entirely without merit.  M.E.H. also objects that his trial counsel did not properly investigate his case, a claim also lacking in merit.  He has not identified a single specific professional error of either trial or appellate counsel, much less the manner in which any purported errors prejudiced the outcome of the commitment proceedings.

Judge Perretti concluded that M.E.H. was:

17

>a sexually violent predator, suffering from
>abnormal mental conditions and personality
>disorders, that adversely influence his cognitive,
>emotional and volitional capacities so as to
>predispose him to commit sexually violent acts.
>He has serious difficulty controlling his sex
>offending behavior, as he has demonstrated by his
>repeated sexual offending behavior.
>
>Thus, it is highly likely that he will
>recidivate if not confined for treatment as a
>sexually violent predator.
>
>We have conducted our own review of the record.
>Judge Perretti's findings are firmly supported by
>substantial and credible evidence and the legal
>conclusions she reached are consistent with controlling
>legal principles. We affirm substantially for the
>reasons stated by Judge Perretti in her comprehensive
>oral opinion of May 5, 2006. There is no doubt that
>M.E.H. "has serious difficulty controlling his ...
>harmful sexual behavior such that it is highly likely
>that [he] will not control his ... sexually violent
>behavior and will reoffend."

(Opinion of Appellate Division at 2, 5-9 (Feb. 27, 2008)

(citations omitted).)

Petitioner has directed this Court to no Supreme Court cases

holding that he is entitled, in a civil commitment proceeding, to

the procedures he desires. Nor has this Court located any such

precedent. To the contrary, for example, none of the Supreme

Court decisions detailed above requires such procedures. In

addition, the Court of Appeals for the Third Circuit has held

that there is no right to trial by jury in a civil commitment

proceeding. See Aruanno v. New Jersey, No. 09-3499, 384

Fed.Appx. 144, 2010 WL 2381047 (3d Cir. Jun. 14, 2010), pet. for

cert. filed (Oct. 25, 2010).

As Judge Sheridan of this Court has held, the Sixth
Amendment right of confrontation,[4] and its attendant limitations
on the use of hearsay evidence, does not attach to civil
proceedings such as the civil commitment proceedings under the
SVPA.  See Talbert v. Goodwin, No. 07-4101, 2009 WL 223710
(D.N.J. Jan. 29, 2009).  Nor does any Supreme Court case hold
that the Due Process Clause prohibits the use of hearsay
testimony in civil commitment proceedings.  Id.; Bagarozy v.
Goodwin, No. 08-0468, 2008 WL 4416455 at *13 (D.N.J. Sept. 23,
2008).  Nor did the use of hearsay evidence in this proceeding
deprive Petitioner of fundamental fairness.  He received advance
notice of the hearing, was represented by counsel, presented
expert testimony of his own, and had the opportunity to cross-
examine the State's expert witnesses.  Cf. Vitek v. Jones, 445
U.S. 480 (1980).

Similarly, the Supreme Court has never held that civil
commitment requires trial by jury.  See Baldwin v. Rogers, No.
07-1741, 2009 WL 1228432 (D.N.J. May 1, 2009) (citing Vitek v.
Jones (requiring a hearing before a disinterested factfinder));
Poole v. Goodno, 335 F.3d 705 (8th Cir. 2003); Bagarozy v.

---

[4] The Sixth Amendment Confrontation Clause provides, "In all
criminal prosecutions, the accused shall enjoy the right ... to
be confronted with the witnesses against him."  U.S. Const.
amend. VI.

Goodwin, No. 08-0468, 2008 WL 4416455 at *13 (D.N.J. Sept. 23, 2008).

Finally, this Court has located nothing in controlling Supreme Court precedent that would preclude a state court from relying, in a subsequent civil commitment proceeding, on a conviction pursuant to a guilty plea for which the prisoner has fully served his sentence. Cf. Custis v. United States, 511 U.S. 485, 487 (1994), (a defendant in a federal sentencing proceeding may not collaterally attack the validity of a prior state conviction used to enhance his or her sentence under the Armed Career Criminal Act of 1984); Drakes v. I.N.S., 330 F.3d 600 (3d Cir. 2003) (alien may not challenge, in removal proceedings, validity of underlying convictions used to support the removal petition).

A review of the record compels the conclusion that there was clear and convincing evidence to commit Petitioner under the New Jersey SVPA. The decision of the State courts was neither contrary to nor an unreasonable application of controlling Supreme Court precedent. Petitioner is not entitled to habeas relief.

## V.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


                                    /s/ Jose L. Linares
                                    Jose L. Linares
                                    United States District Judge

Dated: December 21, 2010

21